KIMBERLY ANN MILLER JORDAN, Plaintiff-Appellant, v. CHARLES LIND *et al.*, Defendants-Appellees.

Third District   No. 3—87—0740

Opinion filed November 30, 1988.

Jerry B. Lucas, of Kankakee, and Lloyd Kordick, of Colorado Springs, Colorado (William A. Alexander, Jr., of counsel), for appellant.

Bernice Jacobs and Michael G. Thomas, both of Cassiday, Schade & Gloor, of Chicago (Richard A. Barrett, Jr., of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This is a medical malpractice case wherein plaintiff alleged, by her fifth amended complaint, that defendants Dr. Charles Lind (Dr. Lind) and St. Mary's Hospital of Kankakee (St. Mary's Hospital) were negligent in their performance of nerve blocks in January 1978. The trial court granted defendants' motion for summary judgment on September 30, 1987, on the basis that the limitations period had run and that plaintiff's estoppel theory to toll the statute was not well taken.

Plaintiff received a series of lumbar nerve blocks in January of 1978 and a lumbar sympathectomy on February 23, 1978, for treat-

ment of symptoms caused by a horse stepping on her foot. Approximately 10 nerve blocks were administered by Dr. Lind at St. Mary's Hospital over a period of several consecutive weekdays interrupted by a weekend in January of 1978. The nerve blocks consisted of the injection of an anesthetic agent into the sympathetic nerves in the lumbar spine. Plaintiff was under a local anesthesia and able to observe and provide input during the procedure. Plaintiff later had a right lumbar sympathectomy performed under general anesthesia on February 23, 1978, by physicians not subject to this appeal. Dr. Lind, however, was the anesthesiologist during that procedure.

Apparently the sympathectomy did not relieve plaintiff's condition and at the direction of Dr. Lind she was admitted to the Mayo Clinic in April of 1978. She returned to the Mayo Clinic in June of 1978. Plaintiff took her medical records from St. Mary's with her to the Mayo Clinic. Although it is unclear whether the records indicated that nerve blocks had been performed, plaintiff's deposition testimony reveals that the physicians at Mayo Clinic were aware of and criticized the nerve blocks, as well as the sympathectomy.

After plaintiff's second visit to the Mayo Clinic, she never returned to St. Mary's Hospital or the care of Dr. Lind. She was, however, treated at numerous hospitals by numerous doctors in Illinois and Colorado. Plaintiff's present condition has been diagnosed, among other things, as paralysis of the bowel and bladder.

In mid-April of 1978, plaintiff first contacted an attorney about the possibility of a medical malpractice action. She authorized the attorney to obtain her medical records from St. Mary's Hospital. Plaintiff claims that the records received were void of any documentation regarding the nerve blocks performed by Dr. Lind. On February 20, 1980, plaintiff filed her original complaint in the circuit court of Cook County against Dr. Lind, St. Mary's Hospital and others, alleging negligence in the performance of the right lumbar sympathectomy. The complaint contained no allegations regarding the earlier nerve blocks. Dr. Lind and St. Mary's Hospital subsequently filed a motion for change of venue which resulted in an order entered July 2, 1980, transferring the case to Kankakee County. A new suit was filed on January 14, 1982, in Kankakee County alleging, in essence, the same cause of action as the previous complaint filed in Cook County.

The first written interrogatories and production request addressed to Dr. Lind and St. Mary's Hospital were filed on September 30, 1982. Plaintiff first raised allegations of negligence regarding the nerve blocks by filing a second amended complaint dated May 17, 1984. The second amended complaint, as well as third and fourth

amended complaints, was dismissed pursuant to defendants' motions. At issue is the fifth amended complaint filed on November 14, 1986. Counts I, II, IV and V of that amended complaint are directed against Dr. Lind and St. Mary's Hospital and concern the nerve blocks performed in January of 1978. Dr. Lind and St. Mary's Hospital moved for summary judgment on those counts which was granted on September 30, 1987. In his memorandum opinion, the trial judge found "not only that the limitations period had clearly run but also finds that the arguments of the plaintiff to toll or estop the running of the statute of limitations are not well taken."

The procedural issue presented is whether the trial court erred in granting defendant's motion for summary judgment. In this regard plaintiff raises three specific issues for consideration: (1) whether the trial court erred in determining, for statute of limitations purposes, that the allegations of medical malpractice made in the fifth amended complaint did not relate back to the date of filing of the original complaint; (2) whether the trial court erred in determining that defendants, Dr. Lind and St. Mary's Hospital, were not estopped from asserting the statute of limitations as a defense to the allegations of medical malpractice set forth in the fifth amended complaint; and (3) whether the trial court erred in determining that section 13—215 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—215) was inapplicable to the case at bar.

■ Summary judgments are properly awarded when "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) An order for summary judgment will not be reversed on appeal absent abuse of discretion by the trial court such that plaintiff's right to fundamental justice is violated. *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201; *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 493 N.E.2d 372.

Regarding issue (1), the record clearly indicates that plaintiff first specifically charged negligent performance of the nerve blocks by her second amended complaint filed May 17, 1984. It is equally clear from the record that the nerve blocks in question were performed by Dr. Lind in January of 1978. For purposes of this issue, we will assume, as did plaintiff, that she became aware of the possible negligence in April of 1978 while at the Mayo Clinic.

Section 13—212 of the Illinois Code of Civil Procedure provides that medical malpractice actions must be filed within two years of the

date "on which the claimant knew, or through the use of reasonable diligence should have known \*\*\* of the injury \*\*\* for which damages are sought \*\*\* but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury." (Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) Plaintiff's original complaint was filed in Cook County on February 20, 1980, thus the complaint was timely filed if the cause of action regarding the nerve blocks relates back to the original cause of action regarding the lumbar sympathectomy filed in February of 1980. To this point section 2—616(b) of the Illinois Code of Civil Procedure provides:

"The cause of action \*\*\* set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear form the original and amended pleadings that the cause of action asserted \*\*\* in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery \*\*\*, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action \*\*\* set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(b).)

Plaintiff's basic argument is that the nerve blocks were diagnostic of the lumbar sympathectomy and, therefore, were part of the same transaction or occurrence as the sympathectomy procedure.

Both parties cite as their principal authority *Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 475 N.E.2d 260. In *Chestnut*, the court was faced with a situation strikingly similar to the present case. Chestnut filed her initial complaint in 1981 alleging defendant's tortious conduct in inserting a metal rod of improper length in her leg in 1977. Chestnut had undergone a course of treatments for her injuries since 1974. In 1984, Chestnut sought to amend her complaint alleging that in 1974 defendants used an improper procedure in treating an injury to her left femur. The basis for her amendment was that the claim asserted by the amended complaint grew out of the same trans-

action or occurrence as the original complaint and, therefore, was not barred by the statute of limitations pursuant to section 2—616(b) of the Illinois Code of Civil Procedure. (*Chestnut*, 131 Ill. App. 3d at 26-27, 475 N.E.2d at 261-62.) In construing section 2—616(b), the court quoted *Krieger v. Village of Carpentersville* (1972), 8 Ill. App. 3d 243, 289 N.E.2d 481, wherein it was stated:

> " 'The right to amend and the relation back of an amendment *** depend on whether the original complaint furnishes to the defendant all of the information necessary to prepare its defense to the claim subsequently asserted in the amended complaint. [Citation.] The requirement that a cause of action be stated at the outset with precise accuracy has been shifted to a test of the identity of the transaction or occurrence, on the rationale that the defendant has not been prejudiced so long as his attention has been directed to the facts which form the basis of the claim within the prescribed time. [Citation.]' " *Chestnut*, 131 Ill. App. 3d at 27, 475 N.E.2d at 262, quoting *Krieger*, 8 Ill. App. 3d at 246-47, 289 N.E.2d at 483.

The *Chestnut* court determined that "the only reasonable conclusion which defendants could have drawn from the 1981 complaint was that Chestnut sought to hold them liable for medical malpractice solely on the basis of the insertion of a Kuntscher rod of improper length in 1977." (*Chestnut*, 131 Ill. App. 3d at 27, 475 N.E.2d at 262.) The court further determined that the causes of action asserted in Chestnut's amended complaints were mutually exclusive from the cause of action stated in the original complaint; therefore, it was not inconceivable that defendants would be prejudiced by now having to defend against the allegations of the amended complaint in that defendants would not have been on notice to preserve evidence regarding the treatment of Chestnut prior to 1977. *Chestnut*, 131 Ill. App. 3d at 28, 475 N.E.2d at 262.

■ The reasoning in *Chestnut* holds true in the present case. The original complaint filed in 1980 spoke only of a lumbar sympathectomy in February of 1978 wherein Dr. Lind was the anesthesiologist. There is no reason to believe that those allegations would or should have alerted Dr. Lind that he was also subject to a medical malpractice suit based on his performance of certain nerve blocks roughly one month earlier. In fact, exclusivity of the procedures is evidenced by plaintiff's amended complaint, which segregates by separate counts the alleged negligence regarding the nerve blocks and the sympathectomy. Section 2—616(b) of the Illinois Code of Civil Procedure is inapplicable because plaintiff's asserted cause of action regarding the

nerve blocks did not arise out of the same transaction or occurrence as the sympathectomy.

Thus, assuming that plaintiff was aware in April 1978 of the possible negligence regarding the nerve blocks, the second amended complaint filed in May of 1984 was untimely in that the statute of limitations had run. Plaintiff's fifth amended complaint must also fail for the same reasons.

■ We likewise believe that *Chestnut* is persuasive authority for resolution of whether Dr. Lind and St. Mary's Hospital are estopped from asserting the statute of limitations as a defense (issue (2)). The doctrine of equitable estoppel applies to prevent a litigant, whose conduct has caused a plaintiff to delay filing suit until after the limitations period, from asserting the statute as a defense to the cause of action. (*Chestnut*, 131 Ill. App. 3d at 29, 475 N.E.2d at 264; *Real v. Kim* (1983), 112 Ill. App. 3d 427, 445 N.E.2d 783; see *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869.) Nonetheless, "where the lulling of the plaintiff into inaction ceases months before the statute of limitations bars an action, and the plaintiff thereafter has ample time and opportunity to seasonably file his or her complaint, the doctrine of equitable estoppel is inapplicable." (*Chestnut*, 131 Ill. App. 3d at 30, 475 N.E.2d at 264; see also *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 197 N.E.2d 860.) Thus, it is necessary to determine when plaintiff knew or should have known of the injury.

■ ■ We consider plaintiff's own testimony establishes that she knew of the injury and that it was wrongfully caused in April 1978 when she was referred to the Mayo Clinic by Dr. Lind. She testified at deposition that the doctors she spoke to at the Mayo Clinic were critical of the nerve blocks and indicated that they may have contributed to her injury; also, that she contacted an attorney in April of 1978 and authorized him to obtain her medical records. After a person knows of the injury and that it was wrongfully caused, the burden is on the injured person to inquire further as to the existence of a cause of action. (*Witherell v. Weimer*, 85 Ill. 2d at 156, 421 N.E.2d at 874.) Although plaintiff claims that the records sent to her attorney by St. Mary's Hospital were incomplete, we do not consider defendants to have lulled plaintiff into not filing suit. Plaintiff was aware of the nerve blocks and the criticism by other doctors and nothing in the record indicates that plaintiff ever requested additional specific documentation regarding the nerve blocks from either Dr. Lind or St. Mary's Hospital until some years after April of 1978. Furthermore, there is no evidence in the record that Dr. Lind ever consulted with plaintiff after he referred her to Mayo Clinic in April of 1978. At that

point plaintiff still had roughly 20 months to file within the two-year limitations period. (Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) Plaintiff's argument that defendants should have provided information regarding the nerve blocks in 1978 when her attorney made the request is inconsistent to the adversary procedure of medical malpractice claims. It is unusual for a party to voluntarily provide incriminating evidence without being under a legal obligation to do so. Moreover, plaintiff failed to propound any interrogatories to defendants until May 1982, some two years after the original complaint was filed. "When the availability of discovery procedures and sanctions is considered, it would be unreasonable to hold that failure to voluntarily surrender discoverable documents provides a basis for an estoppel to assert the statute of limitations." *Chestnut*, 131 Ill. App. 3d at 30, 375 N.E.2d at 264.

We further do not consider this case similar to *Witherell v. Weimer*, as plaintiff suggests, because in *Witherell* the defendant doctors had continually reassured plaintiff and misdiagnosed her condition for years while she was under their care. Here, Dr. Lind did not consult with plaintiff after he referred her to the Mayo Clinic, well before the limitations period had run. We do not believe Dr. Lind's actions prior to April 1978 could have lulled plaintiff into waiting until May of 1984 to first assert a claim regarding the nerve blocks.

The final issue presented (issue (3)) is whether defendants fraudulently concealed documents from plaintiff. Section 13—215 of the Illinois Code of Civil Procedure provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." Ill. Rev. Stat. 1983, ch. 110, par. 13—215.

■■ ■ Plaintiff's primary argument is that when she authorized her attorney in 1978 to obtain medical records from St. Mary's Hospital, the specific records regarding the nerve blocks were not included. Therefore, plaintiff had to go to great difficulty in getting defendants to even admit that nerve blocks were performed. Plaintiff additionally argues that since Dr. Lind had a fiduciary relationship with her, case law indicates that silence may constitute fraudulent concealment. (See *Harrison v. United States* (5th Cir. 1983), 708 F.2d 1023.) However, as in cases of equitable estoppel, when the party affected by the fraudulent concealment could have discovered it through the exercise of due diligence, section 13—215 does not toll the running of the stat-

ute of limitations if a reasonable time remained in which to file suit. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560; *Blonder v. Watts* (1988), 166 Ill. App. 3d 633, 520 N.E.2d 75.

The fallacy of plaintiff's argument is that even if documents existed which were not disclosed upon plaintiff's attorney's informal request, plaintiff had actual knowledge of the nerve blocks and was told by doctors at the Mayo Clinic that the nerve blocks may have been a cause of her injuries. Moreover, after the complaint was originally filed in 1980, no formal discovery was utilized until September of 1982. We realize that the case was subject to a change of venue; however, it was on file in Cook County for roughly 11 months before it was dismissed in January of 1981 and was not refiled in Kankakee County until January of 1982. Based on the record, as well as plaintiff's testimony, plaintiff has been less than diligent in pursuing her cause of action. Plaintiff's lack of documentary evidence concerning the nerve blocks could have been remedied by directing interrogatories to Dr. Lind or taking his deposition well within the statutory time limits. Plaintiff simply failed to begin a diligent inquiry into the purported negligence within the statutory time limitation.

Finally, a number of motions have been taken with this case on appeal. Defendants-appellees' motion to supplement record on appeal is granted pursuant to stipulation of the parties. Defendants-appellees' motion to strike plaintiff-appellant's brief is denied as we have disregarded any inappropriate argumentation or comments in plaintiff-appellant's statement of facts. Plaintiff-appellant's motion for leave to cite additional authority in support of defendants-appellees' motion to strike is allowed and the additional authority has been considered.

Therefore, we hold that the trial court's order granting defendants' motion for summary judgment is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.